UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:18-cv-00301-FDW

| | |
|---|---|
| CHARLES NALLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| ANDREW SAUL, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 11) and Defendant's Motion for Summary Judgment (Doc. No. 13). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for supplemental security income under 42 U.S.C. § 405(g).[1] For the reasons which follow, Plaintiff's motion is GRANTED, Defendant's motion is DENIED, and the Commissioner's decision is REVERSED AND REMANDED for further proceedings.

## I. BACKGROUND

Plaintiff filed an application for Title XVI benefits on January 26, 2015, alleging a disability which began on April 6, 2013. (Tr. 17). Plaintiff's application was denied on June 15, 2015 and denied upon reconsideration on October 30, 2015. (Tr. 17). Plaintiff then filed a request for a hearing before an Administrative Law Judge ("ALJ"), which was ultimately held on August

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g)

17, 2017 in Charlotte, North Carolina. (Tr. 17). After the hearing, the ALJ denied Plaintiff's application in a written decision dated January 5, 2018. (Tr. 14).

In reaching his decision, the ALJ used the five-step sequential evaluation process for the evaluation of disability claims under the Social Security Act ("the Act"). (Tr. 17-19); 20 C.F.R. § 416.920(a)(4). At the first step, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the filing of his application on January 26, 2015. (Tr. 19). At step two, the ALJ determined Plaintiff has several "severe impairments," as defined in 20 C.F.R. § 416.920(c). (Tr. 19-20); 20 C.F.R. § 416.920(c) ("You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."). Among Plaintiff's severe limitations, the ALJ found that lumbar spine degenerative disk disease, neuropathy, diabetes, and pain in Plaintiff's legs and feet significantly limited his "ability to perform basic work activities as required by SSR 85-28." (Tr. 19). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter "The Listings"). (Tr. 20).

The ALJ determined Plaintiff could "perform light exertional work" despite his impairments. (Tr. 20). In his residual functional capacity ("RFC") analysis, however, the ALJ added the following limitations:

> [Plaintiff] must be able to change positions after walking or[]standing for 30 minutes to sitting for 10 minutes while remaining on task throughout the workday; and can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. The claimant can also frequently kneel and crouch but only occasionally stoop and never crawl. Finally, he can have no exposure to unprotected heights or to moving mechanical parts or workplace hazards.

(Tr. 20-21). At step four, and with these limitations in mind, the ALJ observed that Plaintiff was unable to perform any past relevant work. (Tr. 24). At the fifth and final step, and in light of Plaintiff's age, education, work experience, RFC, and the Vocational Expert's ("VE") testimony, the ALJ determined Plaintiff could perform "jobs that exist in significant numbers in the national economy," including Assembler Small Products I, Spray Paint Inspector, and Inspector and Hand Packager. (Tr. 25-26). Accordingly, the ALJ decided Plaintiff was not disabled under the Act. (Tr. 26).

After receiving the ALJ's decision, Plaintiff requested review by the Appeals Council, which was denied on August 22, 2018. (Tr. 1). Thus, the ALJ's decision became the final decision of the Commissioner. Plaintiff brought the suit before the Court to challenge the Commissioner's decision, and this case is now ripe for judicial review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits: "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. Id.; Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight

3

of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and quotations omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the

4

Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

The Fourth Circuit has held:

> If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is "the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work]."

Lewis, 858 F.3d at 861-62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)) (alterations in original). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635] (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

### III. ANALYSIS

Here, Plaintiff alleges the ALJ erred in two ways: (1) the ALJ erred by according Dr. Anthony Overton's opinion "significant weight" but not including his statement regarding Plaintiff's use of a cane in the RFC assessment, and (2) the ALJ failed to perform a medical necessity analysis for Plaintiff's cane usage when assessing his RFC. (Doc. No. 12, p. 1-2). The Court addresses each argument in turn.

**A. Cane Usage and the RFC Assessment**

Plaintiff's first assignment of error is that the consultative examiner recommended Plaintiff to use a cane for stability and support but "the ALJ did not include the use of a cane in the RFC assessment." Id. at 4. The Commissioner argues that because "Dr. Overton did not document a medical need" for the use of a cane or conduct a medical evaluation establishing the extent to which Plaintiff could ambulate without a cane, the ALJ did not so err. (Doc. No. 14, p. 5).

When an ALJ conducts the RFC analysis, he must conduct a function-by-function analysis, including "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Mascio, 780 F.3d at 636 (quoting SSR 96-8p, 1996 WL 374184). As the Fourth Circuit has made clear, remanding a case "may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam) (omission in original); see also Monroe, 826 F.3d at 188.

The Commissioner's regulations make clear that in articulating the RFC assessment, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. In cases where the ALJ assigns significant weight to a medical opinion, if the RFC is inconsistent with or otherwise implicitly rejects the medical opinion, the ALJ needs to explain the difference. See Ezzell v. Berryhill, 688 F. App'x 199, 201 (4th Cir. 2017). In Ezzell, the Fourth Circuit vacated and remanded an ALJ's determination where the ALJ gave significant weight to a consultative examiner's opinion yet failed to resolve a conflict between that opinion and his RFC assessment. Id. at 201. "Without any discussion, however, the ALJ concluded—implicitly rejecting [the consultative examiner's] opinion—that [Plaintiff] failed to show that his impairment resulted in the inability to ambulate effectively on a sustained basis." Id.

7

When faced with the same issue, other courts have remanded a case when the ALJ's opinion needed further explanation. In Houpe v. Berryhill, No. 5:18-CV-49-DSC, 2018 WL 6268213 (W.D.N.C. Nov. 30, 2018) (Magistrate Judge Memorandum and Order of Remand), the court faced a similar situation to the case at bar. The physician, a non-examining medical expert, "opined . . . that a cane or other assistive device was medically necessary for Plaintiff to balance." Id. at *3. In articulating the RFC assessment, "[a]lthough the ALJ gave 'great weight' to [the medical expert's] opinion generally, she did not acknowledge his finding about a cane and made no allowance for use of a cane in the RFC." Id. As a result, the "ALJ failed to reconcile the inconsistency between her RFC and [the medical expert's] finding that Plaintiff needed a cane or other assistive device for balance." Id. Because of the lack of reconciliation between the medical expert's opinion and the RFC assessment, the district court found the ALJ's decision was not supported by substantial evidence and remanded the case for a new hearing. Id.

The Eastern District of North Carolina reached a similar decision in Rhodes v. Berryhill, No. 5:16-CV-674-FL(2), 2017 WL 2303514 (E.D.N.C. May 10, 2017) (Magistrate Judge Memorandum and Recommendation), adopted 2017 WL 2303505 (E.D.N.C. May 25, 2017). There, the ALJ gave the plaintiff's consultative examiner's opinion "moderate weight," but only mentioned a few aspects of the opinion and stated the opinion was consistent with the record as a whole. Id. at *4. The ALJ failed to discuss portions of the medical expert's opinion which ultimately were inconsistent with the RFC assessment and, accordingly, the disability determination. Id. As he was required to resolve material inconsistencies, see SSR 96-8p, 1996 WL 374184, at *7, this failure prevented the district court from being able to review the Commissioner's decision. Rhodes, 2017 WL 2303514, at *4. In other words, when an ALJ gives

8

weight to a consultative examiner's opinion, and when the ALJ implicitly rejects that opinion in the RFC assessment, the ALJ is required to explain the inconsistency. Id. at *4; see also Wright v. Berryhill, No. 7:17-CV-89-FL(2), 2018 WL 3371931, at *6-7 (E.D.N.C. June 21, 2018) (Magistrate Judge Memorandum and Recommendation), adopted 2018 WL 3370550 (E.D.N.C. July 10, 2018); Wise v. Berryhill, No. 1:17-CV-00092-FDW, 2017 WL 6349241, at *6 (W.D.N.C. Dec. 12, 2017) (acknowledging Ezzell but determining the ALJ's decision had sufficient evidence and explanation of his reasoning to pass judicial review).

Here, the ALJ gave "significant weight" to Dr. Overton's opinion. (Tr. 22). Specifically, the ALJ stated:

> Examination revealed normal muscles and functional range of motion. The claimant has full 5/5 muscle strength in all extremities. Dr. Overton diagnosed low back pain/lumbar radicular pain, peripheral neuropathy secondary to diabetes, painful muscles/myofascial pain, and gait dysfunction. Dr. Overton recommended an EMG study, lumbar epidural steroid injections, and home stretching and range of motion exercises. This opinion is given significant weight as it is supported by exam notes and generally consistent with the overall record.

(Tr. 22) (citations omitted). After then discussing the opinions of other medical sources and statement by Plaintiff's wife, the ALJ continued to say "[t]he record reveals good range of motion and strength and no cane prescription." (Tr. 23). In his medical opinion, Dr. Overton stated, in part, Plaintiff "will continue to utilize his straight cane for stability and support." (Tr. 383). At no point in his written opinion did the ALJ address this statement by Dr. Overton, and although the ALJ questioned whether there was a cane mentioned or prescribed in the record at the hearing, the ALJ made no final determinations on this issue. (Tr. 67-68).[2] Without engaging in any sort of

---

[2] Plaintiff's attorney conceded at the hearing there was no formal prescription for a cane. (Tr. 67). However, the ALJ and Plaintiff's attorney discussed records indicating Plaintiff's use of a cane, including from "the spine specialist," who appears to be Dr. Overton, and it appears the ALJ did not ultimately determine whether or not these statements constituted a prescription. (Tr. 68).

discussion as to why his RFC assessment was inconsistent with and appeared to reject portions of Dr. Overton's opinion, the ALJ's opinion lacked "a sufficient discussion of the evidence and explanation of its reasoning," therefore lacking substantial evidence to base his decision. Ezzell, 688 F. App'x at 201.

The Commissioner argues that because Dr. Overton did not document the medical basis for the use of a cane, and because there was no "prescribed use of a cane," there was no material inconsistency between Dr. Overton's opinion and the RFC assessment. (Doc. No. 14, p. 5); see also The Listings § 1.00(J)(4) ("[An] examination should be with and without the use of the assistive device unless contraindicated by the medical judgment of a physician who has treated or examined the individual. The individual's ability to ambulate with and without the device provides information as to whether, or the extent to which, the individual is able to ambulate without assistance. The medical basis for the use of any assistive device (e.g., instability, weakness) should be documented."). As a result, according to the Commissioner, "it was reasonable for the ALJ not to have interpreted it as a medical opinion, and not to perform a medical necessity evaluation . . . ."). (Doc. No. 14, p. 7). The Court is unpersuaded for two reasons. First, the ALJ is still under a requirement to resolve conflicts between medical expert opinions and the RFC assessment. See Ezzell, 688 F. App'x at 201; see also SSR 96-8p, 1996 WL 374184, at *7. There was no resolution of the conflict or explanation of the inconsistency in this case; instead, the ALJ summarily concluded there was "no cane prescription" without referring to or acknowledging Dr. Overton's statement that Plaintiff would continue to use his cane for stability. (Tr. 23, 383). As Plaintiff identified in his brief, this would create a material inconsistency because the VE testified that Plaintiff's use of a cane would preclude employment at the light level of exertion. (Doc. No.

12, p. 5); see also (Tr. 65-66). The ALJ also noted that Plaintiff would be found disabled if he were only able to perform sedentary work, which would be the only work he could perform if Plaintiff were restricted to using a cane. (Tr. 63-64) ("[T]he claimant would grid out, sedentary level, age of 50."). In other words, because Plaintiff's use of a cane is a dispositive question as to whether or not he is disabled, any inconsistency pertaining to that determination is material.

The second reason is because the Court is unpersuaded by the Commissioner's distinction between "recommendations" and "observations" by the medical expert, with the latter being insignificant as a matter of law when considering the RFC assessment. Based on the language of SSR 96-8p, particularly under the sub-heading "Medical opinions," the Commissioner's regulations make no such distinction. See SSR 96-8p, 1996 WL 374184, at *7. Instead, the regulation makes clear that "[i]f the RFC assessment conflicts with an *opinion* from a medical source, the adjudicator must explain why the opinion was not adopted." Id. (emphasis added). Absent clear regulatory language or caselaw from the Supreme Court or Fourth Circuit, the Court is not prepared to read such a narrow distinction into the regulation. See Cunningham v. Harris, 658 F.2d 239, 243 (4th Cir. 1981) ("In practical terms, when a Social Security Act provision can be reasonably interpreted in favor of one seeking benefits, it should be so construed."). This is not to say that such a distinction (i.e., "recommendations" versus "observations") is improper for an ALJ to base a decision; the Court attempts no answer to that inquiry. What an ALJ must do, however, is be specific when explaining why an RFC assessment is not entirely consistent with the medical opinion, which did not happen here. See Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) ("Show your work.").

## B. Medical Necessity Analysis

Plaintiff's second assignment of error is that the ALJ failed to perform a medical necessity analysis under SSR 96-9p because ALJs are required to determine whether a device used to assist in ambulating is needed constantly, periodically, or only in some situations. (Doc. No. 12, p. 5-6). The Commissioner contends that a medical necessity analysis was not necessary because Plaintiff failed to meet his burden producing sufficient medical documentation for his cane (Doc. No. 14, p. 12).

Under SSR 96-9p, when evaluating a claimant's ability to do other work with an RFC assessment less than a full range of sedentary work, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing" to determine a hand-held device (i.e., a cane) is required. SSR 96-9p, 1996 WL 374185, at *7. Specifically, the documentation must describe the circumstances under which the device is needed, "whether all the time, periodically, or only in certain situations." Id. "The adjudicator [ALJ] must always consider the particular facts of the case." Id. Under the regulations, the claimant has the burden of proof to establish such medical documentation. See generally 20 C.F.R. § 404.1512; see also Timmons v. Colvin, No. 3:12CV609, 2013 WL 4775131, at *8 (W.D.N.C. Sept. 5, 2013).

"Absent a doctor's prescription, a claimant's self-prescribed cane usage is merely a specific subjective complaint that must be substantiated by the objective medical evidence, and the ALJ is not obligated to perform a medical necessity analysis" under SSR 96-9p. Christon v. Colvin, No. 3:15-cv-00305-RJC, 2016 WL 3436423, at *5 (W.D.N.C. June 15, 2016). In Christon, the Court was faced with a claimant that used a cane but did not have a prescription from a doctor requiring the use of the device. Id. Because the plaintiff lacked a prescription, the Court determined the

ALJ had substantial evidence to support his decision. Id. The ALJ further noted in his decision "that Plaintiff's subjective complaints were not completely credible," further supporting his decision not to perform a medical necessity analysis. Id. In Gilmer v. Berryhill, No. 3:17-cv-539-FDW, 2018 WL 3518470 (W.D.N.C. July 20, 2018), the Court faced a nearly identical question. Citing Staples v. Astrue, 329 F. App'x 189 (10th Cir. 2009) and Fletcher v. Colvin, No. 1:14CV380, 2015 WL 4506699 (M.D.N.C. Mar. 29, 2015), the Court noted "a prescription or the lack of prescription for an assistive device is not necessarily dispositive of medical necessity." Gilmer, 2018 WL 3518470, at *2 (quotations and citations omitted). Specifically citing to Staples, the Court observed that the ALJ there erred in relying on the plaintiff's lack of prescription for cane usage, but that error did not require remand because the plaintiff failed to show a medical necessity to use the cane. Id. (citing Staples, 329 F. App'x at 192). The Court concluded in Gilmer that because the plaintiff likewise failed to prove a cane prescription, the ALJ was correct in determining that he failed to meet his burden of proof. Id.

In the case presently before the Court, and in light of the above standards, remand is appropriate because it is unclear whether Plaintiff has provided enough evidence to meet his burden of showing medical necessity for a cane. As discussed extensively in Section III-A above, the ALJ's treatment of Dr. Overton's opinion (giving it "significant weight") and subsequent conclusory statement that there was no formal prescription for a cane without discussing Dr. Overton's opinion regarding cane usage means there is not substantial evidence to conclude a medical necessity evaluation was unnecessary. The Court finds that Plaintiff has provided at least some evidence showing his cane usage may be necessary. (Tr. 383). It may be the case that the ALJ was correct in believing there was no prescription for the use of a cane or that such use was

13

not necessary. The problem, however, is the fact that the question as to whether it was a prescription—be it "formal" or otherwise—was not resolved at the hearing or in the ALJ's written opinion.³ The Court, however, will not attempt to re-weigh the evidence to answer this question; doing so would exceed the authority granted to it by Congress. See 42 U.S.C. § 405(g) ("[T]he court shall review only the question of conformity with such regulations and the validity of such regulations."). Because it is unclear whether Dr. Overton's statement regarding cane usage was a prescription or whether cane usage was necessary, and because the ALJ did not clarify the ambiguity despite awarding Dr. Overton's medical opinion "significant weight," the Court finds there was not substantial evidence to support the ALJ's decision, and remand is appropriate here.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion (Doc. No. 11) is GRANTED, Defendant's motion (Doc. No. 13) is DENIED, and the Commissioner's decision is REVERSED AND REMANDED for further proceedings consistent with this opinion.⁴

IT IS SO ORDERED.

Signed: December 4, 2019

_____
Frank D. Whitney
Chief United States District Judge

---

³ As discussed above, although Plaintiff's counsel conceded at the hearing there was not a "formal prescription" for the use of a cane, he argued that statements regarding cane usage were sufficient to establish a prescription. The ALJ did not decide this issue during the hearing, nor did he clarify it in his written opinion. The Court does not attempt to answer whether a prescription can be "informal," or what an "informal prescription" might look like, nor whether such statements here constituted a prescription. These are issues of fact which must be determined on remand by the ALJ.

⁴ Under 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security . . . ." The Court lacks the power to vacate the Commissioner's decision. Id. Accordingly, the Court reverses the Commissioner's decision and remands for further proceedings consistent with this order.